UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael L. Lansdale,<br><br>    Plaintiff,<br><br>v.<br><br>UPS Supply Chain Solutions, Inc.,<br><br>    Defendant. | Court File No. 16-CV-04106 JRT-BRT<br><br>**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE DISCOVERY DEADLINE FOR LIMITED PURPOSES, TO COMPEL DISCOVERY FOR LIMITED PURPOSES, AND FOR OTHER RELIEF** |

## INTRODUCTION

Plaintiff Michael Lansdale has failed to show good cause for his untimely request to modify the Pretrial Scheduling Order. He seeks now to engage in an eleventh-hour fishing expedition despite already being permitted to discover specific facts within key witnesses' knowledge, including those facts known by undisputed decision-maker Cris Florence. His discovery requests failed to meet proportionality requirements when he made them over 20 months ago, and they continue to violate Rule 26's limitations now, nearly 14 months after the close of fact discovery and the deadline for non-dispositive motions. Lansdale believed information about alleged comparators and Stephen Flowers was discoverable long ago. Defendant UPS Supply Chain Solutions, Inc. ("UPS") timely objected to his discovery requests, and Lansdale took no action to clarify, advance, or otherwise re-assert them.

Lansdale should not be rewarded for his lack of diligence, nor for his thinly-veiled attempt to railroad UPS's trial preparation by diverting resources to track down information with tangential relevance at best and prepare for and defend apex depositions

with no discernible connection to this case. Lansdale's Motion should be summarily denied so the parties and Court can move forward with trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.  Lansdale had ample knowledge and opportunity to pursue written discovery on the subjects-at-issue by February 2017, but he chose not to do so upon receiving UPS's objections.**

Lansdale first filed this action on November 15, 2016. (*See* Compl.) Per the Court's Pretrial Scheduling Order, fact discovery was initially to close on September 15, 2017, later extended to September 29, 2017. (ECF 12, 19.) Lansdale served written discovery on February 28, 2017, and, following the parties' stipulation for an extension, UPS responded on April 13, 2017. (Riskin Decl., ¶4, Exs. A-D.)[1]

Lansdale's initial discovery requests included both interrogatories and requests for the production of documents related to alleged comparators generally and former UPS President Stephen Flowers specifically. (*See* Exs. A and B.) UPS objected to the discovery on the grounds that it exceeded the permissible scope of Rule 26. (*See* Exs. C and D.) The specific discovery sought and responses include:

> **INTERROGATORY NO. 23:**  Identify each employee of Defendant who Defendant contends violated UPS's corporate credit card policies (as asserted in the Joint Rule 26(1) Report herein) or UPS employee expense reimbursement policy(ies) from January 1, 2012 through March 31, 2016, and (a) identify whether each such employee received any form of discipline resulting from such violation(s), and (b) identify the reason(s) why the form of discipline was imposed against each such employee for such violation(s).
>
> **ANSWER:** Defendant objects to this Interrogatory on the ground that it is beyond the scope of permissible discovery as provided in Fed. R. Civ. P.

---

[1] Exhibits are attached to the Declaration of Sarah B. Riskin.

26(b)(1).  Specifically, this Interrogatory is not proportional to the needs of the case, as it is not limited to similarly situated employees, contains no geographic limitation, and is not limited to the same time frame in which Plaintiff violated UPS's credit card policy.  Therefore, any potential discovery obtained from this Interrogatory is not important to resolving the issues in this case.   Defendant also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

**INTERROGATORY NO. 24:**    Identify whether Stephen Flowers, UPS's President, Global Freight Forwarding Operations, was alleged or determined by UPS to have violated any corporate credit card policy(ies) or employee expense reimbursement policy(ies) of UPS, and (a) identify whether Mr. Flowers received any form of discipline resulting from such violation(s), and (b) identify the reason(s) why the form of discipline was imposed against Mr. Flowers for each such violation(s).

**ANSWER:**  Defendant objects to this Interrogatory on the ground that it is beyond the scope of permissible discovery as provided in Fed. R. Civ. P. 26(b)(1).  Specifically, this Interrogatory is not proportional to the needs of the case, as Stephen Flowers is not similarly situated to Plaintiff, and any potential discovery obtained from this Interrogatory is not important to resolving the issues in this case.  Defendant also objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

(Ex. C at 14.)

**REQUEST NO. 25:** All documents and things concerning or reflecting any employee of Defendant who Defendant contends violated UPS's corporate credit card policies (as asserted in the Joint Rule 26(f) Report herein) or UPS expense reimbursement policy(ies) from January 1, 2012 through March 31, 2016, and (a) including whether each such employee received any form of discipline resulting from such violation(s), and (b) including the reason(s) why the form of discipline was imposed against each such employee for such violation(s).

**RESPONSE:**  Defendant objects to this Request on the ground that it is beyond the scope of permissible discovery as provided in Fed. R. Civ. P. 26(b)(1).  Specifically, this Request is not proportional to the needs of the case, as it is not limited to similarly situated employees, contains no geographic limitation, and is not limited to the same time frame in which Plaintiff violated UPS's credit card policy.  Therefore, any potential discovery obtained from this Request is not important to resolving the

issues in this case.  Defendant also objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

**REQUEST NO. 26:** All documents and things concerning or reflecting whether Stephen Flowers, UPS's President, Global Freight Forwarding Operations, was alleged or determined by UPS to have violated any corporate credit card policy(ies) or expense reimbursement policy(ies) of UPS, and (a) including whether Mr. Flowers received any form of discipline resulting from such violation(s), and (b) including the reason(s) why the form of discipline was imposed against Mr. Flowers for each such violation(s).

**RESPONSE:**  Defendant objects to this Request on the ground that it is beyond the scope of permissible discovery as provided in Fed. R. Civ. P. 26(b)(1).  Specifically, this Request is not proportional to the needs of the case, as Stephen Flowers is not similarly situated to Plaintiff, the Request has no temporal limitation or relevance, and any potential discovery obtained from this Request is not important to resolving the issues in this case.  Defendant also objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

(Ex. D at 11-12.)

Following his receipt of UPS's responses, Lansdale did not take any action to revise, re-assert, or discuss these requests or UPS's responses to them.  (Riskin Decl. ¶7.) Lansdale never sent a deficiency letter or, until this Motion, requested a meet-and-confer, sought an informal discovery conference, or filed a motion to compel.[2]  (*Id.*)

---

[2] The parties did engage in an informal discovery conference on November 3, 2017, following Lansdale's untimely disclosure of Dr. Troy Scott as an expert witness during the October 2, 2017 settlement conference, a full month after the deadline for expert disclosures had passed.  (*See* ECF 22; Riskin Decl. ¶22.)  UPS stipulated to an extension of the schedule to allow Lansdale time for Dr. Scott to prepare and produce an expert report, provided UPS also be given an opportunity to depose him.  (ECF 23.)  All other deadlines remained in place, including the deadline for the close of fact discovery and related non-dispositive motions.  (*Id.*; ECF 12, 19.)

4834-1562-5339

UPS also served discovery requests on Lansdale, which Lansdale answered on April 27, 2017. (Exs. E and F.) UPS specifically asked Lansdale to identify similarly-situated individuals he believed were treated differently than him. Again, Lansdale disclosed his beliefs regarding Flowers' relevance, in addition to purported knowledge of other unnamed comparators:[3]

> **INTERROGATORY NO. 16:** Identify each employee of UPS who you allege was similarly situated to you, but treated more favorably than you regarding the terms and conditions of your employment including, but not limited to, application of UPS's policies as alleged in paragraph 13 of your Complaint.
>
> **RESPONSE TO INTERROGATORY NO. 16:** Subject to the General Objections, Stephen Flowers, President of UPS Global Forwarding, was neither disabled nor regarded by UPS as disabled. On information and belief, Mr. Flowers was alleged to have violated UPS's Employee Expense Reimbursement Policies and/or UPS's Corporate Card User Guide during his employment with Defendant. Upon UPS's discovery of Mr. Flowers' alleged violations of such Policies and/or Guide, Mr. Flowers was not

---

[3] UPS also asked Lansdale to "[i]dentify each person who you know or believe has knowledge, or claims to have knowledge, of facts that are in any way related to the allegations or claims in your Complaint or UPS's Counterclaim," (Ex. E, Interrogatory No. 6,) and requested "[a]ny and all documents which describe, refer to, or relate to any communications or exchange of information between [Lansdale] and Defendant, including but not limited to any present or former agent, employee, or official of UPS, relating to … any subject related to this lawsuit," (Ex. F, Request No. 4), "[a]ny and all documents which describe, refer to, or related to any communications or exchange of information between [Lansdale] and others not listed in Response to Request No. 4 relating to … any subject related to this lawsuit," (*id.*, Request No. 5), and "[a]ny and all statements [Lansdale had] obtained from any witnesses or other person purported to have knowledge of the facts alleged in [the] Complaint, the allegations and defenses in Defendant's Answer, Defendant's Counterclaim, or [Lansdale's] Answer to Defendant's Counterclaim." (*Id.*, Request No. 22.) The obligation to respond to discovery is continuing. Fed. R. Civ. P. 26(e). Lansdale has not disclosed the source of the alleged unsolicited information "recently received by [him] and his legal counsel," (Pl.'s Br., ECF 255, at 12 (citing Glennon Aff., ECF 256, ¶13)), nor has he produced any documentation of the alleged unsolicited information which forms the basis for this Motion.

5

terminated from employment and was not held to the "higher standard" to which Mr. Lansdale was held, and was treated differently and more preferentially relative to Lansdale.

Plaintiff Lansdale is also aware of multiple instances over many years of the same kind and nature of business-related expensing of beverages and meals as the conduct in which Lansdale engaged, but the affected personnel were neither disciplined nor terminated from employment with Defendant, and were treated differently and more preferentially relative to Lansdale.

Plaintiff Lansdale may supplement his Response to this Interrogatory as his investigation and discovery continue.

(*Id.*)

Several months later, in August 2017, Lansdale served a second set of interrogatories and a second set of requests for the production of documents on UPS. (Exs. G and H.)  Both sets of discovery asked for information about Lansdale's wages, other compensation, and benefits; neither asked for information related to comparators. (*See id.*)

**B.   UPS witnesses provided deposition testimony on the topics-at-issue.**

Following written discovery and document production, the parties began taking depositions. (Riskin Decl. ¶12.)  Lansdale first deposed UPS witnesses Herman Gonzales and Erika Faifer. (*Id.*)  Faifer and Gonzales conducted the investigation and pre-termination interview with Lansdale.[4] (*See generally* ECF 237.)

Lansdale questioned both Gonzales and Faifer about their experience with investigations and knowledge of allegations regarding Stephen Flowers' credit card use.

---

[4] The precise roles Gonzales and Faifer each played in the investigation and interview, while material to the litigation, are irrelevant for purposes of this Motion.  Suffice it to say, there is no dispute that Gonzales and Faifer are the two most directly involved with the investigation, the two who interviewed Lansdale, and the two who communicated information about the interview to decision-maker(s).

6

Gonzales testified that he had been personally involved in four or five investigations in the last eight or ten years involving individuals that had "been flagged by procurement" for something related to credit card use and expense reporting and, to the best of his memory, they were each terminated. (Ex. I, Gonzales 245:4-246:23.) Gonzales also testified that he knew Flowers was the former president of Global Freight Forwarding, and he denied having knowledge of any discipline imposed on Flowers or any allegations with regards to Flowers' credit use/expense reporting. (*Id.* 246:24-247:22.) Other than objections to form, UPS permitted these lines of questioning. (*See id.* 245:5-247:22.)

Similarly, Faifer testified that she thought she had been involved in ten or more investigations involving employees' expense accounts since becoming a Security Investigator, and that, although she would need to look at her reports to be sure, she thought at least nine of them resulted in termination.[5] (Ex. J, Faifer 30:12-31:16.) Faifer was also questioned about and denied having knowledge of any investigation into or discipline imposed on Flowers. (*Id.* 360:22-361:16.)

UPS deposed Lansdale next. (Riskin Decl. ¶15.) Lansdale testified that, as President of Global Freight Forwarding, Flowers was not at the same level of the organization as Lansdale. (*Id.*, Ex. K, Lansdale 399:9-18.) He also testified that his manager Cris Florence had told him Flowers had an issue with expenses involving a trip to Las Vegas and a hockey tournament, that Flowers had been forced to "apologize to his regional managers, and [that UPS] put him on a special assignment to get one more year

---

[5] Faifer testified that she has conducted over 1,000 investigations since becoming a Security Investigator. (Faifer 30:4-11.)

4834-1562-5339

so he could retire." (*Id.* 399:12-400:8.)  According to Lansdale, this had happened in 2014 or 2015—two or three years prior to the deposition. (*Id.* at 2:4 (indicating date of deposition); 400:11-17.)  Flowers did not report to Florence or any of the other individuals involved in this case. (*Id.* 400:22-401:14.)

Florence was deposed roughly a month later, on September 6, 2017. (Riskin Decl. ¶16.)  Florence made the termination decision, with recommendations from Angie Brewer and George Ryan. (*Id.*, Ex. L, Florence 157:2-158:5.)  Florence testified that Flowers had been two levels above him in the organization before retirement, and that he—Florence—had no knowledge of "any expense report or expensing issue involving Mr. Flowers in his employment with UPS." (*Id.* 11:19-12:3; 13:18-14:9.)  Florence also testified about his involvement in other investigations and discipline of other employees for issues related to expense accounts. (*See, e.g.*, *id.* 74:4-20; 81:12-23; 95:3-10; 141:19-144:20; 225:8-24.)

C. **Fact discovery closed September 29, 2017, with Lansdale relinquishing the opportunity to depose additional witnesses or compel production of outstanding discovery.**

Fact discovery was initially set to close on September 15, 2017, but the parties met difficulty scheduling two outstanding depositions, so they agreed to seek a short extension of the fact discovery deadline. (Riskin Decl. ¶17.)  They filed a stipulation in which they specifically outlined all outstanding discovery and, on September 13, 2017, the Court amended the Pretrial Scheduling Order to provide for the close of fact discovery and filing of "[a]ll non-dispositive motions relating to fact discovery" on or

8

4834-1562-5339

before September 29, 2017.  (ECF 17 and 19.)  The stipulation does not mention or reference any disputes related to Flowers or other alleged comparators.  (*See* ECF 17.)

Discovery then closed on September 29, 2017.  In the nearly eight months of the discovery period, Lansdale did not seek any additional depositions beyond those of Faifer, Gonzales, Florence, and a Rule 30(b)(6) deposition focused solely on Lansdale's alleged pecuniary loss, which Lansdale ultimately decided against taking.  (Riskin Decl. ¶17.)

### D. Known witnesses who were not deposed provided additional testimony by affidavit at summary judgment.

Lansdale knew early in discovery that Florence made the termination decision with the recommendations of Brewer and Ryan, and he also had several documents showing Florence's manager, Ron Jordan, being involved in the investigation and termination decision.  (*See, e.g.*, Riskin Decl. ¶18, Ex. M; Florence 157:2-158:5.) Lansdale also knew Lester Weekes in UPS's Procurement Department first initiated the investigation.  (*See, e.g.*, Riskin Decl. ¶19, Ex. N.)  But because Lansdale did not depose them, at summary judgment, Brewer, Jordan, Ryan, and Weekes each submitted affidavits.  (*See* ECF 46, 53, 56, 59.)  In each, the witnesses made generic statements that, based on their experience at UPS, Lansdale was treated consistently with others who engage in similar conduct.  (*See* ECF 46 at ¶37; ECF 53 at ¶¶7, 20; ECF 56 at ¶¶7, 15; ECF 59 at ¶5, 13.)  The statements are similar in specificity to those made by Gonzales, Faifer, and Florence.  Lansdale raised an objection to the affiants' statements at the

9

June 13, 2018, hearing on the cross-motions for summary judgment (Ex. O at 7:18-8:19), but, even then, he took no action to obtain additional discovery. (Riskin Decl. ¶7.)

## II. PROCEDURAL POSTURE

Now, through attorney affidavit, Lansdale claims that he only "recently received information that Stephen Flowers did, in fact, violate one or more UPS corporate credit card and/or expense reimbursement policy(ies) but was not terminated from employment with UPS." (Pl.'s Br., ECF 255, at 11 (citing Glennon Aff. ¶13).) Lansdale then proceeds to describe specific information he was allegedly provided, namely that "Flowers continued in employment with UPS in excess of one year at the same or higher salary, was placed in an executive position created for him until he reached his 55th birthday, and achieved/was granted full retirement and retirement benefits … ." (*Id.*)

Through this Motion, he seeks to re-open discovery to allow him to depose Flowers, Flowers' alleged former manager Jim Barber, and UPS Vice President Mohammad Azam. Neither Barber nor Azam have ever been mentioned by any witness in this case, nor have their names appeared in the 6,200+ pages produced by UPS alone. (Riskin Decl. ¶21.) Lansdale also seeks to reopen discovery to compel UPS to disclose all information and produce all documents responsive to Interrogatory Nos. 23 and 24 and Request for Production Nos. 25 and 26. With no acknowledgement of the potential burden of production or witness availability, Lansdale represents that this discovery can be completed before the January 3, 2019 trial.

### III. LEGAL ARGUMENT

**A.     The time for discovery has long passed, and Lansdale has failed to demonstrate good cause for modifying the schedule.**

Fact discovery closed in this case nearly 14 months ago, on September 29, 2017. (ECF 12.) That same day, the deadline for filing non-dispositive motions passed. As the party seeking to modify the scheduling order, Lansdale bears the burden of showing good cause for why the Court should grant his request. Fed. R. Civ. P. 16(b)(4); Local R. 16.3(b); ECF 12. He has failed to make this showing.

"Good cause" is an "exacting" standard, *Shukh v. Seagate Tech., LLC*, Civ. No. 10–404 (JRT/JJK), 2013 WL 53835 at *3 (D. Minn. Jan. 3, 2013), and it requires the moving party to first demonstrate his "diligence in attempting to meet the order's requirements."[6] *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). Diligence is not demonstrated by carelessness, inadvertence, neglect, or any other "litany of unpersuasive excuses . . . which commonly undergird an untimely Motion to Amend.'" *Nw. Mut. Life Ins. Co. v. Weiher*, No. CV 12-1430 (SRN/JSM), 2016 WL 6917204, at *12 (D. Minn. July 11, 2016) (quoting *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 n.1 (D. Minn. 2000)); *see also E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009) ("It hardly bears mentioning . . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant for relief." (quotation omitted)). To

---

[6] "'The existence or degree of prejudice to the party opposing the modification' and other factors may also affect the decision." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

11

demonstrate good cause, the movant must show that "the Scheduling Order cannot reasonably be met despite the diligence of the party seeking the extension." *Hibbing Taconite*, 266 F.R.D. at 265 (quotation omitted). A party that fails to take steps to correct alleged discovery deficiencies or act on information within its possession does not demonstrate good cause. *See Shukh*, 2013 WL 53835 at *4, *4 n.2 (citing cases); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340–41 (2d Cir. 2000) (a party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the motion was available to it earlier in the litigation).

Courts regularly hold parties to pretrial scheduling orders, particularly when parties knowingly allow deadlines to pass and only seek modification on the eve of trial. For example, in *Minnesota Supply Co. v. Raymond Corp.*, the court denied the plaintiff's attempt to reopen discovery to seek information regarding the defendant's expert witness when the case was otherwise trial-ready. No. CIV. 99-832 JRT/FLN, 2002 WL 31898162 (D. Minn. Dec. 27, 2002). There, unlike here, the plaintiff first sought the additional information within roughly two months after the close of discovery, and just ten days after the close of expert discovery. *Id.* at *1. The court found that the plaintiff had not complied with the scheduling order and had not shown good cause for a modification. *Id.* at *2. Instead, the court noted that "[t]he Magistrate Judge is authorized to compel parties to adhere to the established scheduling order." *Id.* (citing Fed. R. Civ. P. 16(f)).

Here, Lansdale has allowed an egregious period of time to pass without exercising even one bit of diligence. It has been:

12
4834-1562-5339

- 20 months since he served discovery (and disclosed his belief that Stephen Flowers engaged in similar bad conduct and is an appropriate comparator);

- 19 months since he received UPS's objections;

- Nearly 16 months since he obtained testimony from Faifer and Gonzales on the subjects;

- Over 14 months since he obtained Florence's testimony;

- Over 14 months since he and UPS sought a modification of the Pretrial Scheduling Order to complete specific remaining fact discovery;

- Nearly 14 months since the close of discovery and deadline for filing non-dispositive motions;

- More than eight months since UPS's moving brief and allegedly offending affidavit testimony;

- More than five months since oral argument; and

- More than two months since the Court first provided notice of the trial date. (ECF 242.)

In that time, Lansdale never once raised the possibility that he would move to compel responses to the subject written discovery or seek to depose Flowers or anyone involved with any alleged investigation into Flowers' expense account.

Lansdale's rationale for the delay is unimpressive. With regards to discovery related to Flowers, Lansdale has learned nothing materially different than what he already knew: He believed well before initiating litigation that Flowers had been accused of

13

credit card misconduct without being terminated.  The "new" information he claims to have acquired is nothing different—he now merely has names of people who can allegedly verify what he already believed.  Likewise, he has not demonstrated that he acquired any materially new knowledge regarding alleged comparators.  Lansdale was aware from discovery that Procurement investigates credit cardholders; he knew that Faifer and Gonzales had each investigated individuals who were terminated for actions related to their credit cards; and he knew that it was possible comparators might exist, as evidenced by his initial discovery requests.  Yet, he sat on the requests, chose not to send any deficiency letters or raise concerns informally or formally with UPS, did not avail himself of the Court's resources for resolving discovery disputes, and made no effort to discover additional information from others involved in the decision-making process through depositions, despite knowing of their identities.

Courts have rejected belated attempts to modify scheduling orders when movants have acted with far more diligence than Lansdale has demonstrated here.  *See, e.g.*, *Morrison Enter., LLC v. Dravo Corp.*, 638 F.3d 594, 610-11 (8th Cir. 2011) (denying motion filed two months before trial and nine months after deadline passed); *Firefighter's Inst. for Racial Equal. ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (denying motion filed three days after the deadline for motions to compel and two weeks after the close of discovery); *Shukh*, 2013 WL 53835 (denying motion for modification filed months <u>before</u> close of discovery period, in anticipation of not being able to complete discovery); *see also Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,

No. CIV. 044213 JRT/AJB, 2011 WL 282632 (D. Minn. Jan. 26, 2011) (denying request filed two months before trial and two years after the close of discovery).

**B.     Even if he showed good cause, Lansdale's requests should be denied as beyond the permissible scope of discovery under Fed. R. Civ. P. 26.**

Lansdale's quest for additional discovery should also be denied on the merits and as an exercise of the Court's discretion. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) ("Even [if a party demonstrates good cause], the district court retains discretion as to whether to grant the motion."). The requests appear to be nothing more than a fishing expedition, with little-to-no discernible benefit to outweigh the burden of production. Rule 26 provides for broad discovery, but it also requires discovery to be "proportional to the needs of the case." Fed. R. Civ. P. 26(b). In determining proportionality, factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

First, the company-wide discovery Lansdale seeks is not important to the case. "Company-wide statistics are usually not helpful in establishing pretext in an employment-discrimination case, because those who make employment decisions vary across divisions." *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997); *see also Wagner v. Gallup, Inc.*, 788 F.3d 877, 888 n.4 (8th Cir. 2015) (affirming decision to limit companywide discovery in age-discrimination claim to only those who were terminated, the same age or older than Plaintiff, had a comparable employment

15

function, and worked in the same region); *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014) (finding evidence of other employees receiving written or verbal warnings irrelevant to question of pretext, because the other employees were not similarly-situated); *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (rejecting plaintiff's claim that "every nurse, every CNA is a comparator" because only those similarly-situated were relevant comparators for the pretext analysis); Lansdale worked in Supply Chain Solutions ("SCS") and reported to Cris Florence; but the discovery he seeks now relates to some 33,000 corporate credit cardholders and then some, not limited to SCS or his line of reporting. (*See* ECF 46, Weekes Aff. ¶21.)

Second, the requests are so broad that they render any argument of importance absurd. Lansdale seeks "**[a]ll** documents and things concerning or reflecting **any** employee … who Defendant contends violated UPS's corporate credit card policies … or UPS employee expense reimbursement policy(ies) …." (Ex. C, Request No. 25.) Lansdale does not limit his requests to violations of the specific policies at issue here, violations related to the corporate American Express program, or violations related to corporate credit card use at all. An individual without a corporate card but who violated the expense reimbursement policies by, for example, booking travel directly rather than through UPS's approved vendor would fall within the scope of Lansdale's request. Additionally, not all problems with expense reporting are detected or resolved in the same manner; some issues are easily resolved with a phone call, some are sent to Security, and some are passed to local controllers or managers. (ECF 46, Weekes Aff. ¶¶2, 7, 8, 18, 21.) Lansdale can hardly claim a minor issue resolved with a single phone

16

call bears any similarity to his habitual manipulation of software to hide dozens of expenses from UPS's view.

Third, the information is sensitive and personal—information courts recognize is worthy of protection. Aside from seeking information about UPS's suspicions, Lansdale also asks for discovery on whether each employee was disciplined and the reasons for the particular discipline. (Ex. C, Request No. 25.) Lansdale's requests intrude on the privacy of third-party former and current UPS employees, which is precisely the type of overbroad discovery courts aim to curb absent a showing of particularized need. *See, e.g.*, *Raddatz v. Standard Register Co.*, 177 F.R.D. 446 (1997). Lansdale has shown no such need here.

Indeed, Lansdale cannot show a particularized need for the requested discovery, because the requested discovery is unlikely to yield any helpful information. Putting aside the lack of congruence in decision-makers and alleged bad conduct, Lansdale seeks to use this discovery to show pretext; meaning, he intends to show that, as an allegedly disabled-person, he was treated differently than others not disabled. (*See* Pl.'s Br., ECF 255, at 17.) But the cited requests are silent on status with regards to disability. (*See* Exs. A and C.) Even if UPS provided Lansdale the requested information, documents, and things, the discovery would not result in Lansdale being able to point to even one person without a disability who was treated differently.[7] And with the testimony

---

[7] Nor would the information provide any indication of employees' roles in the organization, so Lansdale would be unable to identify those similarly-situated from a hierarchy perspective. Notably, Lansdale has already established that Flowers was not

17

Lansdale obtained from Faifer, Gonzales, and Florence, UPS has already shown that others have been terminated for activity related to their credit card use, so it is already known that he will not be able to claim he is the only person who has ever been terminated.

Moreover, UPS would not be able to provide disability information, because UPS does not track individuals' status with regards to disability. (Norris Decl. ¶2.) This leads to the question of burden. Lansdale's Motion should be denied because the proposed discovery would impose an undue burden on UPS that would outweigh any benefit derived. Investigations into corporate credit card use are not centrally controlled, nor are records centrally maintained. (*See id.*, ¶¶3-5; *see also* ECF 46, Weekes Aff. ¶2 (describing potential methods of addressing suspected misuse, including Procurement investigations, Security and Compliance investigations, and handling by local managers and controllers); *id.* ¶37 (explaining that procurement does not always know the outcomes of cases).) As evidenced by the investigation into Lansdale's credit card use, decisions are made on a case-by-case basis. Obtaining the discovery Lansdale seeks would therefore require a manual exercise of going down every rabbit hole to (1) identify suspected cases of employee expense reimbursement violations or credit card misuse (whether arising from a routine Procurement audit or otherwise); (2) determine the facts uncovered during any subsequent investigation to know how similar or dissimilar the conduct was to Lansdale's; (3) identify the individuals involved in determining whether

---

similarly-situated, but he also has not established Flowers' status with regards to disability.

to impose discipline; and (4) understand the precise reason(s) for such discipline. The enormity of the task is made that much more clear when one considers that Lansdale's investigation alone involved <u>nine</u> UPS personnel between Procurement, Security, Human Resources, and Lansdale's direct and indirect managers. As noted, even after this information is tracked down, it will not provide any clarity as to the role of alleged disabilities in UPS's conduct.[8]

Finally, the depositions Lansdale seeks are beyond the scope of relevance, and they would serve no purpose but to harass UPS's highest-level executives. The relevant question is whether Lansdale was treated by others "'similarly-situated' in all relevant respects." (ECF 237 at 24 (quoting *Prod. Fabricators, Inc.*, 763 F.3d at 970 (internal quotation omitted)). "Similarly-situated employees 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." (*Id.* (quoting *Evance*, 719 F.3d at 678)). Lansdale has already presented evidence regarding the other individuals involved in this investigation, which the Court rejected because those individuals were not similarly-situated. (ECF 237 at 24.) He now seeks to expand the scope of discovery, but he has admitted that Flowers did <u>not</u> have the same supervisor, and he has presented no facts, argument, or even speculation that the individuals he now seeks to depose had any involvement with or even passing knowledge of UPS's investigation into <u>Lansdale's</u> credit card use and subsequent termination. The depositions he seeks would be futile, a

---

[8] Lansdale's invocation of other UPS cases is unwarranted, misleading, and irrelevant. The cases cited deal with fundamentally different issues and different UPS businesses altogether, including policies in a collective bargaining agreement not applicable to SCS.

waste of time, and a waste of resources. These are precisely the types of apex depositions courts seek to avoid. *Cardenas v. Prudential Ins. Co. of Am.*, No. CIV.99-1421(JRT/FLN), 2003 WL 21293757, at *1 (D. Minn. May 16, 2003).

## CONCLUSION

This case is on the eve of trial. The parties (and Court) should be focused on pre-trial submissions and preparation, not Lansdale's meritless attempt to open a new can of worms. Discovery is closed, and it should remain so. UPS respectfully requests that the Court deny Lansdale's Motion. UPS further requests that the Court order Plaintiff to pay UPS's expenses and attorney's fees incurred in conjunction with this Motion, pursuant to Fed. R. Civ. P. 16(f)(2).

NILAN JOHNSON LEWIS PA

Dated: November 21, 2018    By: */s/ Sarah B. Riskin*
Joseph G. Schmitt (#231447)
Sarah B. Riskin (#0388870)
Jason P. Hungerford (#0395908)
Donald M. Lewis (#62844)
120 South Sixth Street, Suite 400
Minneapolis, MN 55402
Telephone: (612) 305-7500
Fax: (612) 305-7501
jschmitt@nilanjohnson.com
sriskin@nilanjohnson.com
jhungerford@nilanjohnson.com
dlewis@nilanjohnson.com

ATTORNEYS FOR DEFENDANT