# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL L. LANSDALE, | Civil No. 16-4106 (JRT/BRT) |
| Plaintiff, | |
| v. | **ORDER ON MOTIONS IN LIMINE** |
| UPS SUPPLY CHAIN SOLUTIONS, INC., | |
| Defendant. | |

Thomas E. Glennon, **THOMAS E. GLENNON, P.A**., 4900 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for plaintiff.

Donald M. Lewis and Sarah B. C. Riskin, **NILAN JOHNSON LEWIS PA,** 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant.

Plaintiff Michael Lansdale brings this action against defendant UPS Supply Chain Solutions, Inc ("UPS") asserting employment discrimination under state and federal law. On November 15, 2018, he brought a motion to modify the pretrial scheduling order and to compel limited discovery. (Mot., Nov. 15, 2018, Docket No. 253.) U.S. Magistrate Judge Becky R. Thorson denied the motion, holding that Lansdale had not shown good cause to grant his requests. (Order Denying Motion to Alter ("MJ Order") at 9, Dec. 7, 2018, Docket No. 300.) Lansdale objects to the Magistrate Judge's order. (Appeal/Obj., Dec. 14, 2017, Docket No. 322.) Because Lansdale has not shown good cause, the Court will overrule his objection and affirm the order.

Additionally, both Lansdale and UPS brought several Motions in Limine, seeking to exclude certain evidence at trial, which begins on January 3, 2019. This order will address these Motions.

## DISCUSSION

The facts relevant to Lansdale's objection and the Motions in Limine are not disputed and are sufficiently summarized in the Magistrate Judge's Order, (MJ Order at 1-4), and the Court's prior summary judgment order, (Mem. Op. and Order at 2-12, Aug. 17, 2018, Docket No. 237). Thus, the Court will move directly to a discussion of the issues.

## I. LANSDALE'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER

"The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Reko v. Creative Promotions, Inc.,* 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). This Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

Federal Rule of Civil Procedure 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (internal quotations omitted). The "exacting" standard set by Rule 16(b) requires that a moving party first make the requisite good cause showing. *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009). Even then, however, "the district court retains

discretion as to whether to grant the motion." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Because scheduling orders are "a vehicle designed to streamline the flow of litigation through [the Court's] crowded docket," the Court does not take such orders lightly, and where good cause to modify has not been shown, "will enforce them." *Id.*

Lansdale objects to the Magistrate Judge's determination that he failed to show good cause to justify reopening discovery for limited purposes. Specifically, he argues that the Magistrate Judge erroneously concluded that he did not act with diligence during discovery or after discovery ended.

The Magistrate Judge did not clearly error in making this finding. First, Lansdale repeatedly ignored the opportunity to protect his discovery rights during the discovery period. The discovery he now wants to compel—seeking information about similarly situated employees and information about alleged policy violations committed by UPS's former President Stephen Flowers—was first served on UPS in March 2017. UPS objected to the discovery in April 2017, asserting that his request regarding similarly situated employees was overbroad and that his request regarding Stephen Flowers was irrelevant. Despite these objections, Lansdale did not ask the Court to compel the discovery, as was his right, nor did he seek to narrow his discovery request. In short, he exhibited no diligence in attempting to secure the discovery material during fact discovery.

Lansdale acknowledges that he did not protect his discovery rights but asserts that "[p]arties must assess and make responsible professional judgments" regarding whether a discovery deficiency warrants affirmative action, such as a motion to compel. (Appeal/Obj. at 9.) Lansdale claims to have understood UPS's objections to his discovery

requests as confirmation that UPS would not seek to use any of the underlying material in this case.[1]  And, because Lansdale apparently did not think the material was useful to him either, he made a professional judgment that a motion to compel was not warranted.  He essentially states that his discovery period failures should be forgiven because he did not know that the information was useful.

Even if this were true, it does not excuse Lansdale's lack of diligence after the discovery period ended.  Lansdale argues that he was blindsided when UPS introduced information regarding similarly-situated employees in support of its post-discovery summary judgment motion.[2]  He says that he did not realize the similarly-situated information was relevant until "Defendant's Motion for Summary Judgment which was argued in June 2018 and this Court's" August 17, 2018 order.  (*Id.* at 2.) (emphasis in original).  He also argues that he did not have any valid basis to bring a motion to compel the Stephen Flowers discovery until October 2018, when a confidential source provided him with new information.  Thus, he argues that his November 15, 2018 Motion at issue here was not untimely and that good cause exists.

Yet Lansdale knew or should have known that UPS was going to use the similarly-situated information in March 2018 at the latest, when UPS filed its motion for summary

---

[1] Lansdale supposedly came to this understanding based on the fact that parties have a responsibility to respond to discovery requests that seek any relevant information, including information a party believes it may use in its defense.  Because UPS did not turn over the information, Lansdale assumed it was irrelevant.

[2] There is a dispute regarding whether the information—statements made in Lansdale's managers' affidavits—was even the same information that Lansdale's discovery requests sought. The Court need not decide this issue at this time.

judgment. Yet he did not bring a motion to compel discovery or a motion to reopen discovery at that time. Further, Lansdale's irritation with UPS for using the information in its summary judgment motion was evident at the summary judgment hearing, held June 13, 2018. (Tr. of 6/13/2018 Hr'g at 7-8, Oct. 15, 2018, Docket No. 249.) Yet Lansdale waited until November, over 7 months after he first learned that UPS would rely on this information, to bring his motion.

Lansdale's argument that he did not have any basis to bring a motion to compel the Stephen Flowers discovery is equally unavailing. Essentially, he argues that, because he did not have any concrete information regarding Flowers' purported policy violations, he could not bring a motion to compel discovery into the matter. Accordingly, only when Lansdale received concrete information from his confidential source in mid-October could he file a motion to compel. The Court is unpersuaded by this argument. First, Lansdale confuses his belief that a motion to compel would have been unsuccessful with diligence. His lack of effort to protect his discovery rights is at issue. Second, it is unclear to the Court that Lansdale has a stronger basis for discovery as to Flowers now than he did during the discovery period. During the discovery period, Lansdale claimed that Cris Florence, his manager, had told him a rumor that Flowers had violated the same corporate policy that Lansdale had. Now, he claims that an unnamed individual provided him with that information. The Court sees no reason to reopen discovery on the eve of trial on the basis of an unsubstantiated rumor.

Finally, regardless of the above, good cause does not exist to reopen discovery regarding Flowers because evidence of Flowers's alleged misdeeds is irrelevant to this

case.  Lansdale argues that evidence of Flowers's alleged violation tends to prove that UPS treated similarly-situated employees differently and may impeach his managers' assertions that UPS treated all violators the same way.  To be similarly-situated under the ADA, Lansdale and Flowers "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014).  Stephen Flowers was, at one time, the President of UPS's Global Freight operation, and both parties acknowledge that he was situated several rungs higher on the corporate ladder than Lansdale.  Flowers and Lansdale were not similarly situated.  Further, Flowers is not relevant for impeachment purposes.  First, he is not a similarly-situated employee, and thus his arguably preferential treatment is legally irrelevant to impeach his managers' assertions that UPS treated all violators the same way.  Second, the managers that Lansdale seeks to impeach had no input into the Flowers situation and deny having any knowledge of it.  Thus, evidence Flowers's favorable treatment by UPS executives has little impeachment value for the managers' statements as to their beliefs.

Because Lansdale cannot show that he acted with diligence in protecting his discovery rights, he cannot show good cause to reopen discovery here.  Thus, the Court will overrule his objections to the Magistrate Judge's Order.

## II.  MOTIONS IN LIMINE

### A.  Lansdale's Motions

Lansdale brings two Motions in Limine seeking to preclude UPS from introducing certain evidence at trial. (Pl.'s Mot. in Limine, Dec. 3, 2018, Docket No. 278.) Both motions relate to the alleged discovery deficiencies discussed above. Lansdale argues that, because UPS did not provide discovery into those matters, it should not now be able to introduce information regarding those matters at trial. However, "[i]n order to impose sanctions [such as exclusion] under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party." *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 327 F.3d 771, 779 (8th Cir. 2003) (citing *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999)); *see also Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013) ("a Rule 37(b) sanction should not be imposed by the trial court unless [an order to compel] is in effect.") Lansdale never sought a motion to compel, thus exclusion is not warranted. Lansdale's Motions in Limine will be denied.

### B. UPS's Motions

UPS brings eight Motions in Limine. (Def.'s Mots. in Lim. Nos. 1-6, Dec. 3, 2018, Docket No. 262; Def.'s Mot. in Lim. No. 7, Dec. 3, 2018, Docket No. 289; Def.'s Mot. in Lim. No. 8, Dec. 3, 2018, Docket No. 315.)

Motions number one, four, and seven are all related to the discovery dispute discussed above and will be granted. UPS first asks the Court to preclude Lansdale from discussing Stephen Flowers. Given that Flowers is not similarly situated, and is therefore irrelevant, the Court will grant this Motion. UPS's fourth Motion seeks to preclude Lansdale from referencing UPS's alleged discovery deficiencies at trial. Because any

discussion of these deficiencies would be highly prejudicial and of little probative value, the Court will grant the Motion. Finally, UPS's seventh Motion asks the Court to preclude Lansdale from calling three UPS executives at trial. Because Lansdale acknowledges that the executives would only provide testimony regarding Flowers, and the Court finds that Flowers is irrelevant to this case, the Court will grant the Motion.

UPS's second Motion asks the Court to prohibit Lansdale from suggesting that UPS was required to offer him a reasonable accommodation. UPS's Motion is based on the idea that Lansdale has not brought a failure to accommodate claim and therefore whether UPS did or did not offer him one is irrelevant and prejudicial. The Court will grant the Motion, as Lansdale cannot support a failure to accommodate claim.

"An employer's duty to accommodate an employee is not triggered until the employee clearly requests an accommodation." *Kowitz v. Trinity Health*, 839 F.3d 742, 747 (8th Cir. 2016). Relying on *Kowitz*, Lansdale argues that, although he did not specifically request a reasonable accommodation, UPS's duty to offer an accommodation was triggered when he self-reported his alcohol problems to UPS investigators. But *Kowitz* was an exception to the firmly established rule that employees must first request an accommodation before an employer's duty attaches. The facts of *Kowitz* were significantly different: In *Kowitz*:

> Kowitz notified her supervisor in writing that she was unable to complete the physical component of the certification until she had been cleared to do so by her doctor. At this point, Trinity was already aware of Kowitz's disability based on her prior FMLA leave for neck surgery and the information provided in her Return to Work Form. Kowitz advised her

supervisor that she had an appointment scheduled with her doctor in a few days, and would inform him of her clearance that day. Kowitz also indicated that she was still experiencing neck pain, and thanked her supervisor for understanding her condition. After her doctor's appointment, Kowitz called her supervisor and left a voicemail notifying him that she required four months of physical therapy before she would be able to complete the life support certification. The next day, Kowitz was terminated from her position at Trinity, with no further discussion

*Id. at* 747. These extreme facts warranted an exception to the general rule. The Eighth Circuit held that "[t]hough Kowitz did not ask for a reasonable accommodation of her condition in so many words . . . her notification to her supervisor that she would not be able to obtain the required certification until she had completed physical therapy implied that an accommodation would be required until then." *Id.* Thus, "there was evidence . . . that Trinity should have understood—or did understand—Kowitz's communications to be a request for an accommodation" sufficient to overcome the general rule. *Id.*

No similar facts exist here. First of all, Lansdale's "self-reporting" actually came as the result of questioning from UPS. Lansdale had not, like Kowitz, affirmatively told UPS anything that would have made UPS aware of his "desire for an accommodation." *Id.* at 748. Second, and unlike *Kowitz*, Lansdale made no indication that his alleged disability was connected to or would hinder his job performance in any way that would have indicated to UPS that he needed an accommodation. Instead of providing UPS with the clear-cut knowledge that he needed and desired an accommodation, the Court finds that Lansdale's self-reporting falls into the "more ambiguous" category, *id.* at 747, and thus did

not impose upon UPS the obligation to engage in the accommodation process. Because UPS had no duty to engage in that process, it would be highly prejudicial for Lansdale to suggest that it did.

UPS's third motion seeks to preclude Lansdale from introducing evidence regarding state unemployment proceedings that took place after his termination. The Court agrees with UPS that any use of the proceedings to suggest to the jury that UPS's termination of Lansdale was improper has the potential to confuse the jury, and thus will grant the Motion in that regard. However, to the extent that Lansdale would use testimony given at the unemployment proceeding to impeach UPS's witnesses at trial, the Court will withhold judgment and determine at trial whether such impeachment is proper.

UPS's fifth motion asks the Court to preclude Lansdale and his wife from testifying about confidential marital communications, because they vehemently asserted that privilege during discovery. The Court denies this Motion as moot because Lansdale and his attorney have indicated that they will not introduce such communications. The Court will entertain any objections at trial should a dispute arise on this matter.

UPS's sixth motion seeks to preclude Lansdale and his doctor from asserting that Lansdale was a diagnosable alcoholic. The Court will deny the Motion as premature because it is unclear at this stage what specific testimony Lansdale and his doctor will provide. However, the Court agrees with UPS that neither Lansdale nor his doctor have the required expertise to state any medical conclusions regarding Lansdale's alleged alcoholism.

UPS's eighth and final motion asks the Court to preclude Lansdale from referencing unrelated employment discrimination lawsuits against UPS. The Court will grant the Motion regarding the specific cases that Lansdale has already cited, as they are not sufficiently related to the present action to outweigh their prejudicial effect. While the Court cannot grant the Motion as it pertains to any and all outside litigation, the Court notes that any litigation Lansdale seeks to reference is governed by the prior bad acts standard of Federal Rule of Evidence 404(b). To introduce such evidence, Lansdale must show that it is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the [event at issue]." *Batiste-Davis v. Lincare, Inc*., 526 F.3d 377, 380 (8th Cir. 2008) (quoting *Berry v. Oswalt,* 143 F.3d 1127, 1132 (8th Cir. 1998)). None of these factors are met in the cases Lansdale references, as they concern different types of discrimination, involve different managers, and are likely to be highly prejudicial.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Lansdale's Appeal/Objection to the Magistrate Judge's Order [Docket No. 322] is **DENIED**;

2. The Magistrate Judge's Order Denying Lansdale's Motion to Alter/Amend/Correct Other Orders; Motion to Compel; and Motion for Extension of Time to Complete Discovery [Docket No. 300] is **AFFIRMED**;

3.      Lansdale's Motions in Limine  [Docket No. 278] are **DENIED**;

4.      UPS's Motions in Limine Nos. 1-6 [Docket No. 262] are **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.  UPS's Motion in Limine No. 1 is **GRANTED**;

   b.  UPS's Motion in Limine No. 2 is **GRANTED**;

   c.  UPS's Motion in Limine No. 3 is **GRANTED**;

   d.  UPS's Motion in Limine No. 4 is **GRANTED**;

   e.  UPS's Motion in Limine No 5 is **DENIED** as moot;

   f.  UPS's Motion in Limine No. 6 is **DENIED** as premature;

5.      UPS's Motion in Limine No. 7 [Docket No. 289] is **GRANTED**;

6.      UPS's Motion in Limine No. 8 [Docket No. 315] is **GRANTED IN PART**; and

7.      UPS's Motion for Voluntary Dismissal of Counterclaim [Docket No. 276] is **GRANTED**.


DATED:  December 21, 2018              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                              Chief Judge
                                       United States District Court